IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MICROUNITY SYSTEMS ENGINEERING, INC., a California corporation, | § § § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 2:10-cv-00091 |
| ACER INC., *et al.* | § | TJW-CE |
| | § | |
| Defendants. | § § | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT QUALCOMM INC.'S MOTION TO
STAY CERTAIN CLAIMS AND TO SEVER CERTAIN CLAIMS**

Qualcomm Inc.'s ("Qualcomm") motion to sever depends on out-of-district case law that is

directly at odds with the rule in this District.  Courts in this District have repeatedly held that

infringement claims against "unrelated" defendants are properly joined if they accuse similar

products.  *See MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004)

(denying defendant's motion to sever where the record did not show that the defendants' methods

or products were dramatically different); *see also Adrain v. Genetec Inc.*, 2009 U.S. Dist. LEXIS

86855, at *7 (E.D. Tex. Sept. 22, 2009) ("The similarity of the defendants' products is sufficient to

satisfy the nucleus of fact or law test.").  Here, all of the accused products are similar because they

contain or utilize chips[1] that implement ARM Holdings' ("ARM") architecture and instruction sets,

including the Cortex-A8 architecture and the NEON instruction set.[2]  This similarity demonstrates

---

[1] The accused products and services use the following chips: Qualcomm's Snapdragon; Texas Instruments, Inc.'s ("TI") OMAP; the A4 developed by Apple Inc. ("Apple") and manufactured by Samsung Electronics Co., Ltd. ("Samsung); and Samsung's S5.

[2] The Qualcomm Snapdragon is based on ARM's v7 architecture design in the Cortex-A8 and the NEON instruction set.  *See* Ex. 1 (Qualcomm press release).  This technology was developed jointly by ARM and TI in Texas and is used by TI in its OMAP series of chips.  *See* Ex. 2 (ARM press release stating that TI is the first licensee and ARM's lead Partner in the development of the new Cortex-A8 architecture); *see also* ex. 3 (ARM's description of the Cortex-A8 as utilizing ARM's v7 architecture).  Apple's A4 chip also utilizes the same ARM architecture.  *See* Ex. 4 (EE Times article stating that Apple's A4 chip utilizes ARM's Cortex-A8).  So do Samsung's S5 processors.  *See* Ex. 5 (Samsung brochure).

that severance would be inappropriate because MicroUnity's claims against Qualcomm to a very significant extent arise out of the same transaction or occurrence as MicroUnity's claims against the other defendants.

Moreover, severing this case and creating multiple lawsuits would create problems of judicial economy that outweigh any alleged inconvenience to Qualcomm.   Severing and transferring this case "would impose a burden on both the federal court system and [the plaintiff] to maintain two suits with substantially the same issues in two different venues across the country. This is exactly the kind of inefficiency that severance and, to a lesser extent, § 1404(a) transfer was designed to prevent." *Centre One v. Vonage Holdings Corp.*, 2009 U.S. Dist. LEXIS 69683, at *7 (E.D. Tex. Aug. 10, 2009).   It would severely prejudice MicroUnity to have to, for example, litigate multiple invalidity challenges in different forums.   In addition to the burden on the courts and MicroUnity, the existence of multiple lawsuits interpreting the same patents creates an unnecessary risk of inconsistent claim construction and adjudication.  *Adrain*, 2009 U.S. Dist. LEXIS 86855, at *7.

Qualcomm's motion to stay should also be denied because not all of MicroUnity's claims against the handset manufacturers and carriers that incorporate Qualcomm's Snapdragon (the "Qualcomm handset manufacturers" and "Qualcomm carriers," respectively[3]) are contingent upon a showing that Qualcomm's Snapdragon directly infringes.  As to many of MicroUnity's patents, the Qualcomm handset manufacturers and carriers infringe by providing, or inducing customers to use, software or services.[4]  A stay would therefore (1) unduly prejudice MicroUnity and provide

---

[3] The Qualcomm handset manufacturers are HTC Corp. and HTC America Inc. (collectively "HTC"); Google, Inc. ("Google"); Samsung; Samsung Telecommunications America, LLC ("STA"); and LG Electronics, Inc. and LG MobileComm U.S.A., Inc. (collectively "LG").   The Qualcomm carriers are Cellco Partnership ("Cellco"), AT&T Inc. and AT&T Mobility LLC (collectively "AT&T"), and Sprint Nextel Corporation ("Sprint").

[4] *See, e.g.,* Am. Compl., ¶ 56 ("Motorola, Nokia, Palm, Samsung, STA, Acer, HTC, Google, and LG have infringed and continue to infringe one or more claims of the '500 patent by . . . providing software for use on such cell phones and other products"), ¶ 57 ("Verizon, AT&T and Sprint have infringed and continue to infringe one or more claims of

the Qualcomm handset manufactures and carriers with a tactical advantage by indefinitely delaying

adjudication of issues that will not be resolved by MicroUnity's claims against Qualcomm, and (2)

require substantial duplication of effort in two separate proceedings involving the same patents and

products.  For these reasons, the Court should deny Qualcomm's motions.

## I.    **Background**

MicroUnity filed its first amended complaint in this action on June 3, 2010, alleging

infringement by fourteen defendants of fifteen of its patents - RE39,500 and U.S. Patent Nos.

5,737,547;  5,742,840;  5,794,061;  5,812,799;  6,006,318;  6,725,356;  7,213,131;  7,216,217;

7,260,708;  7,353,367;  7,509,366;  7,653,806;  7,660,972;  and 7,660,973.[5]  Also on June 3, 2010,

MicroUnity filed a complaint in *MicroUnity Systems Engineering, Inc. v. Acer Inc.*, No. 10-185

against the same fourteen defendants alleging infringement of U.S. Patent No. 7,730,287, which

issued on June 1, 2010, and U.S. Patent No. 5,742,840, for which a reexamination certificate issued

on May 4, 2010.[6]  Generally, the MicroUnity patents relate to processing different types of media

data, including audio, video, and graphics data, at very high volume in real time.  The MicroUnity

patents disclose a more efficient method for receiving and efficiently processing multiple data

streams, which is required to play 3D computer games or watch streaming video from the internet.

These features are fundamental to modern smart phones and tablet devices.

MicroUnity has brought suit against the various players in these industries that have

worked together to infringe the patents-in-suit.  These players can be broken down into three

categories: (1) chip manufacturers that make, have made, and/or sell accused chips; (2) handset

manufacturers that make, have made, use, offer for sale, sell, and/or import cell phones, tablet

---

the '500 patent by . . . their knowingly contributing to and inducing their customers to purchase and use services which practice processes that infringe"), ¶¶ 63-64,82, 87-88, 94, 106.

[5] There are more than fourteen defendants in these cases, but some are related (*e.g.*, Nokia Inc. and Nokia Corporation).

[6] For ease of reference, references to the "patents-in-suit" shall refer to the 16 patents asserted between both actions.

devices, and related software; and (3) carriers that use, offer for sale, sell, and/or import the accused handsets, related services and software.  Certain of the defendants occupy more than one category, and there is considerable overlap.

Qualcomm ignores the common thread between these three groups of defendants: infringement by all of the accused products and services is based in part on their implementation of ARM technology.[7]  ARM, a United Kingdom based company, developed its ARM v7 architecture and NEON instruction set in conjunction with TI.  The architecture and instruction set are used in all the accused products and services.  The Qualcomm Snapdragon chips are based on ARM's v7 architecture design and the NEON instruction set.  *See* Ex. 1 (Qualcomm press release).[8]  TI's OMAP chips use the same technology.  *See* Ex. 2 (ARM press release stating that Texas Instruments is the first licensee and ARM's lead Partner in the development of the new Cortex-A8, which is based on ARM's v7 architecture); *see also* ex. 3 (ARM's description of the Cortex-A8 as utilizing ARM's v7 architecture).  Apple's A4 also utilizes the same ARM architecture.  *See* Ex. 4 (New York Times article stating that the A4 is based on ARM Cortex-A8).  As does Samsung's S5 processor family.  *See* Ex. 5 (Samsung S5PC110/S5PV210 brochure).  MicroUnity's infringement contentions will therefore have common questions of fact concerning ARM's architecture and instruction set, which are featured in all of the accused products.

While all of MicroUnity's infringement allegations against the processor defendants have the same genesis in ARM designs, not all of MicroUnity's claims against the Qualcomm handset manufacturers and carriers are fully derivative of its claims against Qualcomm.  For example, MicroUnity has alleged that the Qualcomm handset manufacturers and carriers directly infringe

---

[7]  Infringement of U.S. Patent Nos. 5,737,547; 5,812,799; and RE39,500 are unlikely to depend upon the implementation of ARM technology, but the remaining 13 asserted patents will likely rely to a significant extent on the implementation of an ARM architecture and instruction set.

[8]  All exhibits are attached to the Declaration of Nabeel H. Peracha in Support of MicroUnity's Opposition to Qualcomm's Motion to Stay Certain Claims and to Sever Certain Claims.

some of the patents-in-suit or induce customers to use services that infringe. *See* Am. Compl., ¶ 56 ("Motorola, Nokia, Palm, Samsung, STA, Acer, HTC, Google, and LG have infringed and continue to infringe one or more claims of the '500 patent by . . . providing software for use on such cell phones and other products"), ¶ 57 ("Verizon, AT&T and Sprint have infringed and continue to infringe one or more claims of the '500 patent by . . . their knowingly contributing to and inducing their customers to purchase and use services which practice processes that infringe"), ¶¶ 63-64,82, 87-88, 94, 106.  These claims are not contingent upon a showing that Qualcomm is liable for infringement of MicroUnity's patents.

## II.    Legal Standard

### A.    Motions to Sever

Because joinder and motions to sever do not involve substantive issues of patent law, Fifth Circuit law applies to Qualcomm's motion. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  Rule 21 allows the court to sever any claim against a party. FED. R. CIV. P. 21. The district court has broad discretion in deciding whether to sever. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000).

A plaintiff may join multiple defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."[9] FED. R. CIV. P. 20(a)(2).  The Federal Rules of Civil Procedure strongly encourage joinder of claims, parties, and remedies. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

The Fifth Circuit has not endorsed a specific test to determine what is "the same transaction or occurrence" under Rule 20(a)(2). *Perez v. Grupo TMM, S.A.B.*, 2009 WL 926991, at *4 (S.D.

---

[9] Qualcomm does not dispute in its motion factor (B), that common questions of law or fact will arise in this action.

Tex. Apr. 1, 2009).   Several district courts in this Circuit, however, have applied the Eighth

Circuit's "logically related" test espoused in *Mosley v. General Motors Corp.*, 497 F.2d 1330,

1332-33 (8th Cir. 1974).   *See, e.g., Hanley v. First Investors Corp.*, 151 F.R.D. 76, 78-79 (E.D.

Tex. 1993) ("The first prong of Rule 20(a) necessarily entails a 'logical relationship' definition for

series of transactions or occurrence . . . . The thing which makes the relationship 'logical' is some

nucleus of operative facts or law.").

### B.   Motions to Stay

The district court has the inherent power to control its own docket, including the power to

stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Gould v. Control Laser Corp.*,

705 F.2d 1340,1341 (Fed. Cir. 1983).   How to best manage the court's docket "calls for the

exercise of judgment, which must weigh competing interests and maintain an even balance."

*Landis*, 299 U.S. at 254-55.   In determining whether a stay is warranted, courts consider: "(1)

whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving

party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether

discovery is complete and whether a trial date has been set."   *Soverain Software LLC v.*

*Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).

### III.   Argument

### A.   Severing the Qualcomm claims would be improper and waste judicial resources

Severance is improper if some nucleus of operative facts or law exists between the alleged

acts of infringement. *MyMail*, 223 F.R.D. at 457.   In *MyMail*, the court found that the plaintiff

satisfied this test because the record did not demonstrate that the defendants' methods and products

were "dramatically different." *Id.*   Similarly, in *Adrain*, the court denied a motion to sever where

all of the defendants sold an allegedly infringing license plate recognition system. 2009 U.S. Dist.

LEXIS 86855, at *7. The Court held that "the similarity of the defendants' products is sufficient to satisfy the nucleus of fact or law test." *Id.*

Qualcomm's motion cites to numerous out-of-district decisions, while all but ignoring the standard that has been adopted in this District. Qualcomm's Mot. at 10 (citing cases the Northern District of California, Northern District of Illinois, the District of Arizona, the Middle District of Florida, the District of Delaware, and the District of New Jersey). Courts in this District, however, have declined to "follow a handful of district court cases that purportedly hold acts of infringement by separate defendants do not satisfy the same transaction requirement." *MyMail*, 223 F.R.D. at 456.

Here, a "logical relationship" exists between all of the accused products and services because infringement for all products and services will involve to some extent their implementation and use of an ARM architecture and instruction set. The Qualcomm Snapdragon, TI's OMAP, the A4, and Samsung's S5 all are based on the same original ARM architecture and instruction set. These products are similar enough to satisfy the "nucleus of fact or law" test. *See Adrain*, 2009 U.S. Dist. LEXIS 86855, at *7 ("Here, each of the defendants sells a license plate recognition system that allegedly infringes claims 1 and 7 of the '669 patent. The similarity of the defendants' products is sufficient to satisfy the nucleus of fact or law test.").

Additionally, severing this case and creating multiple lawsuits would create problems that outweigh any alleged inconvenience to Qualcomm. Granting Qualcomm's motion to sever, and related motion to transfer, would "impose a burden on both the federal court system and [MicroUnity] to maintain two suits with substantially the same issues in two different venues across the country. This is exactly the kind of inefficiency that severance and, to a lesser extent, § 1404(a) transfer was designed to prevent."[10] *Centre One*, 2009 U.S. Dist. LEXIS 69683, at *7.

---

[10] Qualcomm's Motion to Transfer is addressed in a separate opposition, filed concurrently herewith.

Requiring MicroUnity to defend multiple invalidity challenges in different forums, for example, is highly prejudicial to MicroUnity and wasteful of judicial resources. Qualcomm's motion to sever should therefore be denied.

**B.     Qualcomm's motion to stay should be denied because it prejudices MicroUnity and does not enhance judicial economy**

Qualcomm contends that MicroUnity's claims against the Qualcomm handset manufacturers and carriers should be stayed because all of MicroUnity's claims against the Qualcomm handset manufacturers and carriers are contingent upon a successful showing that a Qualcomm chip infringes one of the patents-in-suit. This is not true. MicroUnity has alleged that the Qualcomm handset manufacturers and carriers directly infringe some of the patents-in-suit or induce customers to use services that infringe. *See* Am. Compl., ¶ 56 ("Motorola, Nokia, Palm, Samsung, STA, Acer, HTC, Google, and LG have infringed and continue to infringe one or more claims of the '500 patent by . . . providing software for use on such cell phones and other products"), ¶ 57 ("Verizon, AT&T and Sprint have infringed and continue to infringe one or more claims of the '500 patent by . . . their knowingly contributing to and inducing their customers to purchase and use services which practice processes that infringe"), ¶¶ 63-64,82, 87-88, 94, 106. Additionally, MicroUnity will assert some claims against the Qualcomm handset manufacturers and carriers that it will not assert directly against Qualcomm. For example, Qualcomm handset manufacturers directly infringe claim 1 of the '217 patent, while Qualcomm infringes on an inducement theory.

Therefore, this is not the "unusual" case where the Qualcomm handset manufacturers and carriers are "only peripherally involved, with their only relevant conduct being resale of products purchased from [Qualcomm]." *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. March 18, 2010). A stay under these circumstances will prejudice MicroUnity, and give the Qualcomm handset manufacturers and carriers a tactical advantage, by

indefinitely delaying the adjudication of issues that would not be resolved by litigating MicroUnity's claims against Qualcomm. *See Cherokee Nation of Oklahoma v. U.S.*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (explaining "the court's paramount obligation to exercise jurisdiction timely in cases properly before it."); *see also Soverain Software*, 356 F. Supp. 2d at 662 ("The first factor, whether a stay would unduly prejudice or present a tactical disadvantage to [Plaintiff], supports denying the stay.").

Additionally, a stay will not enhance judicial economy because it will require the Court to conduct two or more separate proceedings that have substantial overlap. Footnote 3 of Qualcomm's motion indicates that LG, HTC, Cellco, AT&T and Sprint join in its motion. Notably absent from this list of defendants are Samsung and STA, whose new Omnia 7 phone uses a Qualcomm Snapdragon.[11] Neither the defendants joining in the motion, nor Samsung/STA, indicate that they would be bound by claim construction and other infringement decisions of this Court, or in the event of transfer, another Court. Rather than streamline the proceedings, Qualcomm's stay motion would unduly multiply and complicate them.

Qualcomm's motion to stay also ignores the fact that (a) certain parties, such as Samsung and Apple, are both chip and handset providers; (b) certain handset providers, such as Google, sell handsets and also software to the end user; and (c) the service providers Cellco, AT&T and Sprint sell handsets with chips from Apple, Samsung and TI as well as Qualcomm. The defendants do not simply break down into three categories (chip, handset, service); the actual situation is more complicated, and there is considerable overlap. For these reasons, Qualcomm's motion to stay should be denied.

**V.    Conclusion**

---

[11] *See* Ex. 6.

This Court should reject Qualcomm's motion to sever because MicroUnity's claims against all of the defendants involve common questions of fact and severance would result in wasted judicial resources and an unnecessary burden on MicroUnity. The Court should similarly reject Qualcomm's motion to stay MicroUnity's claims against the Qualcomm handset manufacturers and carriers because granting such a stay would prejudice MicroUnity and decrease judicial economy.

DATED: November 4, 2010

Respectfully Submitted,

/s/ Joseph S. Grinstein
Stephen D. Susman, Attorney-in-Charge
State Bar No. 1952100
ssusman@susmangodfrey.com
Max L. Tribble, Jr.
State Bar No. 20213950
mtribble@susmangodfrey.com
Joseph S. Grinstein
State Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Sidney Calvin Capshaw
State Bar No. 03783900
ccapshaw@capshawlaw.com
CAPSHAW DERIEUX, L.L.P.
1127 Judson Rd - Ste 220
PO Box 3999
Longview, TX 75601-5157
(903) 236-9800
Fax: (903) 236-8787

Otis W. Carroll
State Bar No.00794219
nancy@icklaw.com
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, TX 75703

Telephone: (903) 561-1600
Facsimile: (903) 581-1071

Michael F. Heim
State Bar No. 09380923
mheim@hpcllp.com
HEIM, PAYNE & CHORUSH, L.L.P.
600 Travis, Suite 6710
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Douglas R. Wilson
State Bar No. 24037719
dwilson@hpcllp.com
HEIM, PAYNE & CHORUSH, L.L.P.
9442 Capital of Texas Hwy.
Plaza I, Suite 500-146
Austin, Texas 78759
Telephone: (512) 343-3622
Facsimile: (512) 345-2924

George M. Schwab
State Bar No. 58250 (CA)
gschwab@gmspatent.com
LAW OFFICES OF GEORGE M. SCHWAB
235 Montgomery St., Suite 1026
San Francisco, CA 94104
Telephone: (415) 889-5210

Attorneys for MICROUNITY SYSTEMS ENGINEERING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                    /s/  Joseph S. Grinstein
                                    Joseph S. Grinstein