IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MICROUNITY SYSTEMS ENGINEERING, INC., a California corporation,<br>  Plaintiff,<br>v.<br><br>(1) APPLE, INC., a California corporation, (2) AT&T INC., a Delaware corporation, (3) AT&T MOBILITY LLC, a Delaware limited liability company, (4) CELLCO PARTNERSHIP, a Delaware partnership,(5) EXEDEA, INC.,a Texas corporation, (6) GOOGLE INC., a Delaware corporation, (7) HTC CORPORATION, a Republic of China corporation, (8) HTC AMERICA, INC., a Texas corporation, (9) LG Electronics, Inc., a Korean limited company, (10) LG Electronics Mobilecomm U.S.A., Inc., a California corporation, (11) MOTOROLA MOBILITY, INC., a Delaware corporation, (12) NOKIA CORPORATION a Finnish corporation, (13) NOKIA INC., a Delaware corporation, (14) PALM, INC., a Delaware corporation, (15) QUALCOMM INC., a Delaware corporation, (16) SAMSUNG ELECTRONICS CO., LTD., a Korean limited company, (17) SAMSUNG SEMICONDUCTOR INC., a California corporation, (18) SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, (19) SPRINT SPECTRUM LP, a Delaware limited partnership, (20) TEXAS INSTRUMENTS INC., a Delaware corporation,<br>  Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 02:10-cv-91-TJW-CE<br>Consolidated with Case No. 02:10-cv-185-TJW-CE<br><br><br><br><br>Jury Trial Demanded |

# **DEFENDANTS' BRIEF REGARDING DISPUTED PROVISIONS OF THE PROPOSED PROTECTIVE ORDER**

Defendants jointly and respectfully submit this brief regarding the disputed provisions of the proposed Protective Order in order to help facilitate Court resolution. The parties have reached agreement on all terms of the Protective Order with the exception of four key provisions: (1) the method of preventing unnecessary disclosure of highly confidential information to mock jurors (paragraph 8); (2) the appropriate restrictions on access to outside electronic equipment during the review of highly restricted confidential source code (paragraph 11(a); (3) whether written consent should be required before highly confidential information, including source code, can be shared among co-defendants (paragraph 12); and (4) the appropriate scope of the prosecution bar (paragraph 13).

This complex patent action involves 16 patents, with over 380 patent claims asserted against 20 defendants and well over 20 separate and distinct accused products. Defendants are a diverse group of processor manufacturers, end product manufacturers, and resellers. Each category of Defendants are competitors in their respective fields. For example, the processor manufacturers – including Qualcomm, TI, and Samsung – each manufacture distinctly different, and competing, microprocessors. Likewise, the end product manufacturers and resellers sell distinct products, each of which also compete in the market place.[1] The allegedly infringing devices are numerous and varied, and include 8 different series of processor chips, over 30 cellular phones, 2 computers, and 2 portable media players.

---

[1] For example, HTC, Google, and LG allegedly manufacture and/or sell cellular phones and other devices that incorporate Qualcomm's processor. In contrast, Apple, Palm, Nokia, Samsung, STA, and Motorola allegedly manufacture and/or sell accused products that incorporate applications processors from TI and Samsung, but not Qualcomm. Verizon, AT&T, and Sprint allegedly sell accused cellular phones and other devices manufactured by one or more of these entities, as well as services utilizing and software utilized by their devices.

03536.51656/4132149.5  1

There is no dispute that this litigation will necessarily involve the production of highly confidential business information, including an extensive amount of source code, which must be treated with the utmost sensitivity. Indeed, the products and technologies at issue in this case are considered core technologies and product lines by the various Defendants. Defendants therefore seek to include in the Protective Order provisions that will ensure the confidentiality of their highly sensitive material throughout the pendency of this action, including the discovery and pretrial phases, and for a reasonable period thereafter. These specific provisions are considered essential to protecting Defendants' confidential business information, not only from public disclosure, but from unnecessary disclosure among their respective business competitors. Defendants uniformly agree that the requested provisions are warranted and necessary. Importantly, Plaintiff will suffer no undue prejudice or harm if the protective measures sought by Defendants are implemented by the Court.

Defendants therefore respectfully request that the Court enter a Protective Order that includes: (1) a notice and objection period before confidential deposition testimony may be disclosed to mock jurors; (2) a prohibition on access to unsecure electronic equipment such as personal laptops during the source code review that could be used to copy source code outside of the proscribed review and printing procedures during review of that code; (3) a requirement of written consent prior to the disclosure of one Defendant's highly confidential information to another; and (4) a prosecution bar that extends to all persons who have had access to a party's highly confidential, not just those who later seek to prosecute patents related to the patents-in-suit on behalf of the receiving party.

## ARGUMENT

A.  **Defendants Should Have Adequate Notice Before Confidential Deposition Testimony is Disclosed to Mock Jurors**

Paragraph 8 of the proposed Protective Order governs the disclosure of materials designated confidential or highly confidential to mock jurors. In general, the parties agree that mock jurors should be prohibited from viewing or receiving any such designated material, but may view derivatives or summaries of such material provided that the mock jurors: (1) are not affiliated with any party to the case or a direct competitor; (2) agree in writing to be bound by confidentiality; (3) are not given custody of any designated material or derivative materials; and (4) are prohibited from removing and presentations, questionnaires, or notes taken during the mock trial for the room in which the research is concluded.[2]

Despite uniform agreement that restrictions concerning the disclosure of confidential information to jurors are reasonable, Plaintiff and Defendants disagree as to the treatment of confidential deposition testimony during mock trial. Specifically, Plaintiff seeks to treat excerpts of specific deposition testimony as "summary" material that may be shared with mock jurors without restriction and without notice to the producing party so long as the excerpt of the testimony is less than five minutes long. Defendants object to this proposal because specific statements made by a deposition witness will likely include highly-detailed specifics of trade secret matters or other sensitive competitive information that are a far cry from the high-level summary Defendants intended to allow by this exception. Defendants have instead proposed a provision that would allow for the use of confidential deposition testimony in mock trial so long as the producing party is first given notice of the specific disclosure and an opportunity to object.

---

[2] Defendants compromised during the negotiation process by agreeing to waive notice and disclosure with respect to the identity of the mock jurors, and therefore will not have advance notice of who will gain access to confidential information or an opportunity to object.

Specifically, Defendants request that the producing party be given ten days notice and an opportunity to object before the confidential deposition testimony is authorized for use in the mock trial. Defendants respectfully submit that the proposed notice and objection period is reasonable, necessary, and not overly burdensome.

Given the complex nature of this dispute, and the significance of the technology and products at issue to Defendants' respective businesses, the likelihood that the key deposition testimony in this case will include confidential information is very high. For example, in addition to technical data and trade secrets pertaining to the accused devices, party witnesses are likely to be asked to testify about highly confidential licensing, financial, and other competitive business information such as future business plans. This is precisely the type of confidential information that could cause serious injury to a Defendant's business if exposed, and therefore is deserving of strong protections from this Court. Courts have long safeguarded a party's confidential business or technical information wherever there is a threat of serious economic injury. *Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ.A. 93-488-LON, 1994 WL 16189689, at *2 (D. Del. Dec. 19, 1994) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury"); *Landco Equity Partners, LLC v. City of Colorado Springs*, Colo., 259 F.R.D. 510, 515 (D. Colo., 2009) ("[P]rotective orders . . . are common in litigation to protect sensitive information exchanged during the course of discovery, particularly when the documents reflect confidential financial information.")

While perhaps common and desirable, mock trials are not a right provided by the Federal Rules of Civil Procedure. Given the clear need for adequate protection from disclosure, Plaintiff's proposal regarding the appropriate treatment of confidential deposition testimony for use in mock trial is unacceptable. First and foremost, the five-minute limitation does not address

Defendants' confidentiality concerns. Shorter does not mean safer. For instance, a deposition excerpt in which a witness discloses the amount that a Defendant pays for a license, which is considered by that Defendant to be confidential business information and is not released to the public or its competitors, could be disclosed in less than a minute of video footage. Thus, it is just as easy for a trade secret to be disclosed in five seconds or five minutes as it is in thirty minutes. Additionally, Plaintiff's proposal creates serious compliance and enforceability concerns.

Defendants' proposal, on the other hand, simply provides for adequate notice and the opportunity to object before confidential and potentially competitively sensitive information can be disclosed to a group of unknown third parties. This enables each party to monitor, and appropriately raise with the Court, any concerns regarding the disclosure of its highly confidential material before competitive injury can occur. Notably, the same type of notice and objection period is already in place in connection with the trial itself, and given the usual timing of mock trials, is likely to occur close in proximity to when deposition designations will need to be prepared in any event. *See* Dckt. No. 237 (Docket Control Order) (providing that parties shall exchange deposition designations and objections to such designations by May 1, 2013 and May 15, 2013, respectively). Thus, any concerns regarding burden are minimal to nonexistent. Moreover, since all parties will be bound by the same obligations, there are no legitimate concerns regarding fairness. Indeed, the necessity of safeguarding highly confidential business information is of paramount of importance, and therefore strongly outweighs any strategic concern Plaintiff may raise about being made to "preview" its mock trial case. There is simply no reason why the mock trial should have less protective measures in place than an actual trial.

Defendants therefore respectfully request that the Court adopt Defendants' paragraph 8 and reject Plaintiff's proposal.

**B.     Outside Electronic Devices Must be Prohibited from the Source Code Review**

Paragraph 11 of the proposed Protective Order sets forth the protections to be afforded to source code produced in this litigation. In general, the parties have agreed to comply with an extensive set of procedures and rules regarding the production, review, and general treatment of source code, out of recognition that source code is considered to be a company's most carefully guarded trade secret, deserving of the most stringent protective measures. *See Cisco Systems Inc. v. Huawei Technologies, Co.*, 266 F. Supp. 2d 551, 556 (E.D. Tex. 2003) ("[A] portion of a company's confidential source code, if publicly disclosed, could inflict serious irreparable injury."). Even outside of litigation, access to source code is typically limited to only certain employees, and even then on a restricted basis and only to the extent necessary for that employee to perform his or her duties. It is standard practice for companies such as Defendants to employ extensive security measures with respect to how and where source code is accessed within a company's secure network.

Despite the fact that both Plaintiff and Defendants have agreed to a Protective Order that requires production of source code only within a secure facility and on stand-alone computers meeting very particularized specifications and with restrictions on the reproduction of source code, Plaintiff nevertheless proposes a modification of paragraph 11(a) that would allow reviewers to bring into the facility their own unsecure, and extraneous, personal electronic equipment. The purported basis for this request is that it would be more "convenient" for the reviewers to use their own electronic equipment or laptops to take notes. Defendants strongly object to this proposed modification. Plaintiff's proposal threatens the security of the review and

provides no adequate protections against literal copying or transcribing of source code and conversion into an unsecure electronic format. Concerns regarding convenience or expediency should not trump a company's legitimate right to protect its most valuable trade secrets.

Moreover, Defendants' proposal is reasonable, not unduly restrictive, and regularly employed in patent cases. Under Defendants' proposal, source code reviewers will have the ability to take notes with pen and paper, and may also print excerpts of source code. Reviewers will also be provided with various software tools within the stand-alone computer terminal in order to allow for an efficient review. Numerous courts – including this one – have approved of these exact provisions for source code review in patent cases. *See, e.g., WI-Lan, Inc. v. Research In Motion Corporation et al.*, No. 2:08-cv-00247-TJW (E.D. Tex., May 6, 2010) (Dkt. No. 145); *Wiav Solutions LLC v. Motorola, Inc. et al.*, No. 3:09-cv-447-REP (E.D. Va., April 14, 2010) (Dkt. No. 162); *SPH America, LLC v. Acer, Inc. et al.*, No. 3:09-cv-02535-JAH (S.D. Cal, May 24, 2010) (Dkt. No. 402); *IIT Manufacturing Enterprises, Inc. v. Cellco Partnership et al.*, No. 1:09-cv-00190-JJF-LPS (D. Del. October 15, 2009) (Dkt. No. 112).

Accordingly, Defendants request that the Court adopt Defendants' proposal for paragraph 11(a) and prohibit access to extraneous, unsecure electronic equipment in the source code review facility.

C. **Written Consent Should Be Required Before Highly Confidential Materials May Be Shared Among Co-Defendants**

Defendants' proposed paragraph 12 provides that a Defendant's highly confidential material may not be shared with another co-Defendant's outside counsel without first obtaining written consent from the producing party. Defendants have included paragraph 12 in order to address the fact that twenty Defendants are joined in the same lawsuit, many of whom are direct competitors and/or adverse to one another in separate lawsuits. Importantly, *all* Defendants

uniformly agree that this provision is reasonable and necessary. There is no dispute among Defendants that this provision strikes the appropriate balance between concerns of fairness and efficiency, on the one hand, and the paramount need to safeguard highly confidential, competitive business information, on the other. Importantly, Defendants are not proposing that highly confidential material may *never* be shared. Rather, they are requesting that each Defendant be given proper notice before its highly confidential material is disseminated to another co-Defendant.

Plaintiff's proposal is inferior to Defendants' proposed paragraph 12 because it vests Plaintiff with the sole authority to determine whether and when a Defendant's highly confidential material may be shared with its competitor, with no advance notice to that Defendant. Defendants respectfully submit that this the proposal does not adequately protect Defendants' extremely sensitive material and gives the wrong party control over the decision-making process. Given the sheer volume of defendants, patent claims, and products at issue in this case, the volume of documents to be produced in this litigation is expected to be staggering. Defendants are simply asking that an appropriate mechanism be put in place to control the dissemination of this large volume of documents so that competitive information is not inadvertently or intentionally disclosed to the wrong party when there is no compelling justification for doing so. Employing a consent process will not hamper Plaintiff's ability to prosecute its case. Plaintiff's outside counsel will have full access to all of the documents produced by each of the Defendants and Defendants do not anticipate that consent will be unreasonably withheld.

As discussed above, each Defendant in this action is involved in the handset industry, and depends on its confidential information in order to effectively conduct business.[3]  Once a Defendant's highly confidential information is compromised, there is no easy way to repair the resulting damage.  Defendants should not be asked to bear the risk of inadvertent disclosure of highly sensitive documents and information relating to their core businesses and products when there is an efficient means of limiting such risk.  Indeed, Defendants go to great lengths to protect their confidential information outside of litigation, including the employment of a number of different security systems and procedures to protect disclosure of such information.  Employees who have access to confidential materials may undergo a thorough background check, as well as sign non-disclosure and non-competition agreements.  Access to Defendants' facilities is typically restricted, and security badge access and registration/escorting of guests is required.  Defendants' immense efforts in this regard should not be compromised.  Courts recognize the importance of protecting confidential information when Defendants are direct competitors.  *Northbrook Digital LLC v. Vendio Servs., Inc.*, Civil No. 07-2250 (PJS/JJG), 2008 WL 2390740, at *13 (D. Minn. Apr. 4, 2008), *aff'd in part and rejected in part on other grounds*, 2008 WL 2390737 (D. Minn. June 9, 2008) ("[W]here the parties are competitors in a particular field, there is danger that one party may use such information to the competitive disadvantage of the other.").

Moreover, in this case, merely restricting access to highly confidential documents to outside counsel only is not enough.  "[T]here are instances in which the nature of litigation counsel's relationship with a client/party is such as to raise a question as to whether even counsel should be barred from access to such information." *Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.*, Civil No. 08-158-P-H, 2009 WL 1210638 (D. Me. April 30,

---

[3]  Complex relationships amongst the co-Defendants abound, including competitors, direct customers, and customers of competitors.

2009) (citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)).  Applying Federal Circuit law, courts have recognized that it is appropriate to restrict outside counsel deemed to be a competitive decisionmaker[4] from accessing another party's commercially sensitive and trade secret documents when the circumstances warrant it.  *See, e.g.*, *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469-72 (9th Cir. 1992) (concluding that a party's counsel was involved in the kind of 'competitive decisionmaking' that counsels against disclosure since knowledge of another party's trade secrets would require him to refuse his ability to provide legal advice "on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal [the other party's] trade secrets") (citing *U.S. Steel Corp.*, 730 F.2d 1465).

This District has recognized that outside counsel's involvement in patent litigation and patent licensing go hand in hand in the context of competitive decisionmaking.  An attorney's "active involvement 'in licensing through litigation' constitute[s] competitive decisionmaking in part because 'advice and counsel necessarily affect licensing decisions,' and licensing agreements affect[] the parties' strength in the marketplace." *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, 2008 WL 5634214, *6-8 (E.D. Tex., March 14, 2008) (holding that outside counsel's role in litigation and licensing suggested that he was a competitive decisionmaker).  In *ST Sales*, the court held that a plaintiff's outside counsel should be denied access to the defendants' confidential information because there was concern that the plaintiff's outside counsel could use that information to bring "continued litigation" against the same

---

[4]  Competitive decisionmaking, as described in *U.S. Steel*, is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468 n.3); *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1381 (Fed. Cir. 2010).

defendants on behalf of related entities. *Id*. at *7-8. Here, numerous Defendants are engaged in separate lawsuits with each other, some of which involve some of the same products at issue in the case at bar. Accordingly, under Plaintiff's proposed provision, some outside counsel would be privy to otherwise "off-limit" confidential information relevant to other litigations.

Because Defendants are competitors, and their outside counsel also advise or represent them in other litigation and licensing discussions generally, Defendants' proposed paragraph 12 is an appropriate means of preventing unnecessary disclosure of competitive information. Defendants are justly concerned that sharing of information without consent could compromise protected information and affect litigation beyond this case.

In such circumstances, the Court must weigh the risk of inadvertent disclosure and resultant harm "against the potential that the protective order may impair the other part[y's] ability to prosecute or defend its claims." *ST Sales,* 2008 WL 5634214, at *2. Factors to be considered include "[1] the level of risk of inadvertent disclosure of proprietary information, [2] the hardship imposed by the restriction, [3] the timing of the remedy, and [4] the scope of the remedy." *Id*. As described above, the risk of inadvertent disclosure is high given the complexity of the case and the sheer volume of documents and information to be exchanged among the parties. And, the resulting harm of such disclosure is also high, as disclosure of a Defendant's competitive business information to a direct competitor hampers that Defendant's ability to effectively compete in the market and compromises its existing efforts to protect such information from disclosure from other competitors. Plaintiff, on the other hand, will not suffer

any burden or harm; it is merely being required to seek consent before sharing highly confidential material among Defendants.[5]

Because control over the dissemination of sensitive information among competitors is of utmost importance to Defendants, and their proposed provision is reasonable and in line with Federal Circuit precedent, Defendants respectfully request that the Court adopt Defendants' proposed paragraph 12.

**D.   The Prosecution Bar Must Extend Beyond Patents Filed on Behalf of the Receiving Party**

Finally, both Plaintiff and Defendants agree that a prosecution bar is necessary in this case and, for the most part, agree with respect to the duration of the bar, the subject matter to be covered by the bar, and the scope of activities to be prohibited by the bar. The sole dispute is whether the bar should be unduly narrowed per Plaintiff's proposal to only those who prosecute patents in the future relating to the field of the patents-in-suit on behalf of the receiving party and its successor and affiliates, or should more broadly and fairly apply to any individual who has had access to a producing party's highly confidential information, including experts. Defendants respectfully submit that a broader prosecution bar is warranted. Specifically, Defendants request that the prosecution bar prohibit prosecution for a limited period after the lawsuit by all persons who had access to highly confidential information, regardless of whether that person is prosecuting a patent on behalf of a receiving party or on behalf of an unaffiliated third party.

Plaintiff's proposal unnecessarily creates the risk that experts and consultants who are unaffiliated with the receiving party will be able to use Defendants' highly confidential information in connection with the prosecution of patents on the same technology at issue in this

---

[5] Additionally, the need for disclosure of one Defendants' confidential information to another is expected to be rare, and not necessary for Plaintiff to prosecute this case.

case, either on behalf of themselves or on behalf of a business competitor of one of the parties, immediately following the conclusion of this lawsuit.  There is no reason for the parties to have to bear this risk when it can otherwise be avoided by adopting Defendants' proposal.  Indeed, the Federal Circuit recently recognized that it is appropriate to use a prosecution bar as a means of minimizing competitive risk, as "even the most rigorous efforts of the recipient . . . to preserve confidentiality . . . may not prevent inadvertent compromise." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (recognizing the difficulty "for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."); *see also Mercexchange, LLC v. eBay, Inc.*, 467 F.Supp.2d 608, 622-23 (E.D. Va. 2006) (retroactively revising prosecution bar to extend to experts for the same reasons); *In re Worlds of Wonder Sec. Lit.*, 147 F.R.D. 214, 216-17 (N.D. Cal. 1992) (noting that it would be "naïve" to think that expert witnesses who would "most likely" be competitors of the party opposing disclosure would be able to "erase" from their minds the at-issue documents that revealed confidential, internal details of how that party conducts its business).

 Here, the proposed prosecution bar is a narrowly-tailored bar with a duration of only one year.  In light of its limited duration, it is not unreasonable for Defendants to ask that the bar apply to a broader set of individuals, including attorneys, experts, or unaffiliated third parties.  In fact, numerous courts have approved prosecution bars of similar breadth in scope. *See, e.g.*, *Medtronic, Inc. v. Guidant Corp.*, 2001 WL 34784493, *11 (D. Minn. 2001) (barring attorneys who received "Outside Attorneys Eyes Only" information from participating for one year in prosecuting patents related to the "treatment of abnormal cardiac rhythms"); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 WL 1196965, at *3 (D. Del.

May 25, 2004) (holding that patent attorneys who were prosecuting patents in the field of technology involved in the litigation must either be barred from having access to highly confidential information or be prohibited from prosecuting patents in that field of technology for one year following conclusion of the litigation); *Methode Electronics, Inc. v. DPH-DAS LLC*, 679 F. Supp. 2d 828, 835 (E.D. Mich. 2010) (same).

Defendants are sophisticated technology companies who rely on their trade secrets and other confidential information to remain competitive in the marketplace. The ability for an individual to use a Defendant's proprietary information to prosecute a patent for a third party, including a direct competitor, would unjustly and irreparably harm that Defendant. Defendants therefore respectfully request that the Court reject Plaintiff's proposed paragraph 13 and adopt Defendants' proposal.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court enter the proposed Protective Order and adopt Defendants' proposed paragraphs 8, 11(a), 12, and 13.


Respectfully Submitted,


| | |
|---|---|
| /s/ Kelly Hunsaker | /s/ David R. Clonts |
| Eric M. Albritton | David R. Clonts |
| ema@emafirm.com | dclonts@akingump.com |
| **ALBRITTON LAW FIRM** | Michael F. Reeder |
| P.O. Box 2649 | mreeder@akingump.com |
| Longview, TX 75606 | **AKIN GUMP STRAUSS HAUER & FELD LLP** |
| Telephone:  903-757-8449 | 1111 Louisiana Street, 44th Floor |
| Fax:  903-758-7397 | Houston, TX 77002-5200 |
| | Telephone:  713-220-5886 |
| Garland T. Stephens | Fax:  713-236-0822 |
| stephens@fr.com | |
| David J. Healey | Steven M. Zager |

healey@fr.com
Ana Elena Kadala
kadala@fr.com
John Philip Brinkmann
brinkmann@fr.com
**FISH & RICHARDSON PC-HOUSTON**
1221 McKinney Street, Ste. 2800
Houston, TX 77010
Telephone:  713-654-5300
Fax:  713-652-0109

Kelly C. Hunsaker
hunsaker@fr.com
**FISH & RICHARDSON – REDWOOD CITY**
500 Arguello St., Ste 500
Redwood City, CA 94063
Telephone:  650-839-5070
Fax:  650-839-5071
*Attorneys for Apple*

szager@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, NY 10036
Telephone:  212-872-1000
Fax:  212-872-1002

Cono A. Carrano
ccarrano@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone:  202-887-4136
Fax:  202-887-4288

Robert W. Weber
bweber@smithweber.com
**SMITH WEBER, LLP**
5505 Plaza Drive
P.O. Box 6167
Texarkana, TX  75505-6167
Telephone:  903-223-5656
Fax:  903-223-5652
*Attorneys for AT&T, Inc. And AT&T Mobility LLC*

       /s/ Kevin P. Anderson
Karin Hessler
khessler@wileyrein.com
Robert Scheffel
rscheffel@wileyrein.com
Kevin P. Anderson
kanderson@wileyrein.com
**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
Telephone:  202-719-7000
Fax:  202-719-7049

Michael C. Smith
michaelsmith@siebman.com
**SIEBMAN, BURG, PHILLIPS & SMITH, LLP**
113 East Austin Street
Marshall, TX 75670

              /s/ Brian Wikner
Thomas J. Friel, Jr
tfriel@cooley.com
Heidi L. Keefe
hkeefe@cooley.com
Mark R. Weinstein
mweinstein@cooley.com
Kyle Chen
kchen@cooley.com mailto:
Brian Wikner
bwikner@cooley.com
**COOLEY LLP**
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA 94306-2155
Telephone:  650-843-5000
Fax:  650-857-0663

Telephone:  903-938-8900
Fax  972-767-4620

Larry A. Phillips
larryphillips@siebman.com
**SIEBMAN, BURG, PHILLIPS & SMITH, LLP**
300 N. Travis Street
Sherman, TX 75090
Telephone:  903-870-0070
Fax:  903-870-0066
*Attorneys for Cellco Partnership*

David Shuman, In-house Counsel
David_Shuman@htc.com
**HTC AMERICA**
Telephone:  858-945-4307

Robert W. Weber
bweber@smithweber.com
**SMITH WEBER, LLP**
5505 Plaza Drive
P.O. Box 6167
Texarkana, TX  75505-6167
Telephone:  903-223-5656
Fax:  903-223-5652
*Attorneys for Exedea, Inc., HTC Corporation and HTC America, Inc.*


_____/s/ Nora M. Puckett
Jennifer Parker Ainsworth
jainsworth@wilsonlawfirm.com
**WILSON, ROBERTSON & CORNELIUS, P.C.**
P.O. Box 7339
Tyler, TX 75711
Telephone:     903-509-5000
Fax:  903-509-5092

Luann Simmons
lsimmons@omm.com
Nora M. Puckett
npuckett@omm.com
**O'MELVENY & MYERS LLP**
Two EmbarcaderoCenter, 28th Floor
San Francisco, CA  94111
Telephone:  415-984-8700
Fax:  415-984-8701
*Attorneys for Google Inc.*

_____/s/ Michael Oleinik
J. Thad Heartfield
thad@jth-law.com
M. Dru Montgomery
dru@jth-law.com
**THE HEARTFIELD LAW FIRM**
2195 Dowlen Road
Beaumont, TX 77706
Telephone:  409-866-3318
Fax:  409-866-5789

Larry Schmadeka
lschmadeka@lhlaw.com
Soo Hong
sooh@lhlaw.com
Jonathan Kang
lkang@lhlaw.com
Michael Oleinik
moleinik@lhlaw.com
**LEE HONG DEGERMAN KANG & WAIMEY**
660 S. Figueroa St., Suite 2300
Los Angeles, CA 90017
Telephone:  213-623-2221
Fax:  213-623-2211
*Attorneys for LG Electronics MobileComm USA, Inc., LG Electronics, Inc.*

<div style="columns:2">

   /s/ Amanda A. Abraham
Carl R. Roth
cr@rothfirm.com
Brendan C. Roth
br@rothfirm.com
Amanda A. Abraham
aa@rothlawfirm.com
**THE ROTH LAW FIRM**
115 N. Wellington, Suite 200
Marshall, TX  75670
Telephone:  903-935-1665
Fax:  903-935-1797
*Attorneys for Motorola Mobility, Inc.*

   /s/ Amanda A. Abraham
Carl R. Roth
cr@rothfirm.com
Brendan C. Roth
br@rothfirm.com
Amanda A. Abraham
aa@rothlawfirm.com
**THE ROTH LAW FIRM**
115 N. Wellington, Suite 200
Marshall, TX  75670
Telephone:  903-935-1665
Fax:  903-935-1797

Steven Todd Snyder
ssnyder@kslaw.com
NYSBN:  4187977
**KING & SPALDING, LLP**
227 W. Trade St., Suite 600
Charlotte, NC  28207
Telephone:  704-503-2630
Fax:  704-503-2622

Robert F. Perry
rperry@kslaw.com
Telephone:  212-827-4350
Alexas D. Skucas
askucas@kslaw.com
Telephone:  212-827-4049
**KING & SPALDING, LLP**
1185 Avenue of the Americas
New York, NY  10036
Fax     212-556-2222

*Attorneys for Nokia Corporation and Nokia, Inc.*

</div>

<div style="columns:2">

   /s/  David A. Nelson
David A. Nelson
davenelson@quinnemanuel.com
Jennifer Bauer
jenniferbauer@quinnemanuel.com
Christopher Lawnicki

   /s/ Michael E. Jones
Michael E. Jones
Lead Attorney
Texas State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner

</div>

03536.51656/4132149.5　　　　　　　　17

chrislawnicki@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone: 312-705-7400
Fax: 312-705-7401

Jennifer A. Kash
jenniferkash@quinnemanuel.com
Linda Brewer
lindabrewer@quinnemanuel.com
Sanjay Nangia
sanjaynangia@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone: 415-875-6600
Fax: 415-875-6700

Matthew Robson
MatthewRobson@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue
New York, NY 10010
Telephone: 212-849-7000
Fax: 212-849-7100

Harry L. Gillam, Jr.
gil@gillamsmithlaw.com
Gillam & Smith, L.L.P.
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Fax: 903-934-9257
*Attorneys for Qualcomm Inc.*


____/s/ Robert W. Weber
Robert W. Weber
bweber@smithweber.com
**SMITH WEBER, LLP**

Texas State Bar No. 24043679
allengardner@potterminton.com
**POTTER MINTON, P.C.**
110 North College, Suite 500 (75702)
P.O. Box 359
Tyler, TX 75710
Telephone: 903-597-8311
Fax:     903-593-0846

George Riley
griley@omm.com
*Admitted Pro Hac Vice*
Mark E. Miller
markmiller@omm.com
*Admitted Pro Hac Vice*
Ryan K. Yagura
ryagura@omm.com
*Admitted Pro Hac Vice*
George C. Yu
gyu@omm.com
*Admitted Pro Hac Vice*
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, Suite 2800
San Francisco, CA 94111
Telephone: 415-984-8700
Fax: 415-984-8701


*Attorneys for Samsung Electronics Co., Ltd; Samsung Semiconductor, Inc.; and Samsung Telecommunications America, LLC*




____/s/ Amanda A. Abraham
Carl R. Roth
cr@rothfirm.com
Brendan C. Roth
br@rothfirm.com

<div style="display: flex;">

<div>
5505 Plaza Drive
P.O. Box 6167
Texarkana, TX 75505-6167
Telephone: 903-223-5656
Fax: 903-223-5652

Mark W. McGrory
markm@rhgm.com
Lawrence A. Rouse
larryr@rhgm.com
**ROUSE HENDRICKS GERMAN MAY PC**
1201 Walnut St., 20th Floor
Kansas City, MO 64106
Telephone: 816-471-7711
Fax: 816-471-2221
*Attorneys for Sprint Spectrum LP*
</div>

<div>
Amanda A. Abraham
aa@rothfirm.com
The Roth Law Firm
115 N. Wellington, Suite 200
Marshall, TX 75670
Telephone: 903-935-1665
**Fax: 903-935-1797**

Robert T. Haslam
rhaslam@cov.com
Anupam Sharma
asharma@cov.com
Covington & Burling LLP
333 Twin Dolphin Drive
Redwood Shores, CA 94065-1418
Telephone: 650-632-4700
**Fax: 650-632-4800**
*Attorneys for Texas Instruments*
</div>

</div>